UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMES PHILIP DOUGLAS,

           Petitioner,

    v.

MARGARET GILBERT,

           Respondent.

CASE NO. 3:16-CV-06060-BHS-DWC

REPORT AND RECOMMENDATION

Noting Date: June 1, 2018

      The District Court has referred this action to United States Magistrate Judge David W. Christel. Petitioner James Philip Douglas filed his federal habeas Amended Petition, pursuant to 28 U.S.C. § 2254, seeking relief from state court convictions and sentence. *See* Dkt. 1, 23. The Court concludes the Honorable Benjamin H. Settle, the District Judge assigned to this case, previously dismissed Grounds 1, 2, and 3 of the Amended Petition. *See* Dkt. 18. The Court also finds the state court's adjudication of Ground 4 was not contrary to, or an unreasonable application of, clearly established federal law. Therefore, the undersigned recommends the Amended Petition be denied and a certificate of appealability be denied.

1

<u>BACKGROUND</u>

2

**I.      Factual Background**

3

Petitioner was convicted of first degree arson, residential burglary, violation of a

4

protective order, second degree assault, and bail jumping in the Pierce County Superior Court.

5

*See State v. Douglas*, 146 Wash. App. 1046 (2008); Dkt. 11, Exhibit 3. The entire factual

6

background is contained in the Report and Recommendation filed on August 9, 2017. Dkt. 16.

7

Thus, the Court will only provide the facts relevant to Ground 4 in this Report and

8

Recommendation.

9

The Court of Appeals of the State of Washington summarized the relevant facts related to

10

Petitioner's Ground 4 as follows:

11
12

> On May 26, 2010, Douglas again requested to proceed pro se. Although the judge
> expressed concerns about Douglas's ability to represent himself, she conducted a
> colloquy and granted Douglas's request to be allowed to proceed pro se.

13
14
15
16
17
18
19

> On June 20, 2010, the trial commenced. Because the State alleged that Douglas's
> offenses were part of an ongoing pattern of abuse, the trial court bifurcated the
> trial under RCW 9.94A.537(4) to avoid unduly prejudicing the jury. On August
> 17, 2010, the jury found Douglas guilty of first degree arson, residential burglary,
> and felony violation of a protection order. After the jury returned the verdicts,
> Douglas requested that the trial court appoint counsel for the aggravating factor
> phase of trial. The State objected, arguing that reappointing counsel would likely
> require a continuance and that the jury had already been on the case for two
> months. The State also expressed concern that Douglas would not work with
> counsel, resulting in another motion to proceed pro se. After an extensive
> colloquy with Douglas, the trial court determined that Douglas was not willing to
> give control of the case to an attorney and refused to reappoint counsel. At that
> point, Douglas refused to further participate in the case and voluntarily absented
> himself from the aggravating factor phase of his trial.

20
21
22

> On August 19, 2010, the jury found that the arson and residential burglary were
> part of an ongoing pattern of abuse against [three victims]. The jury also found
> that the arson was committed with deliberate cruelty.

23

*State v. Douglas*, 173 Wash. App. 849, 853–54, 295 P.3d 812 (2013) (internal and footnote

24

omitted); Dkt. 11, Exhibit 4, pp. 5-6.

1    **II.    Procedural Background**

2        Petitioner challenged his Pierce County Superior Court convictions and sentence on

3    direct appeal.[1] Dkt. 11, Exhibits 5, 6. The Court of Appeals of the State of Washington reversed

4    the arson, burglary, and violation of a protective order convictions, and affirmed the separate

5    assault and bail jumping convictions. Dkt. 11, Exhibit 3. Petitioner did not seek review by the

6    Washington State Supreme Court and the mandate was issued on October 14, 2008. Dkt. 11,

7    Exhibits 8-10.

8        Petitioner was resentenced on the assault and bail jumping convictions in 2009 because

9    the reversal of the arson and burglary convictions impacted the sentence calculation. Dkt. 11,

10   Exhibit 2. Petitioner was sentenced to twelve months on the assault and bail jumping

11   convictions. *Id.* Petitioner appealed the new sentence to the Court of Appeals of the State of

12   Washington, which affirmed the sentence. Dkt. 11, Exhibits 11-14. On February 8, 2012, the

13   Washington State Supreme Court denied Petitioner's petition for review. Dkt. 11, Exhibits 17,

14   18. The Court of Appeals of the State of Washington issued its mandate on March 5, 2012. Dkt.

15   11, Exhibit 19.

16       Petitioner received a new trial on the counts of arson, burglary, and violation of a

17   protective order. *See* Dkt. 11, Exhibit 1. He was again convicted on these three counts. *Id.*

18   Petitioner appealed the convictions and sentence to the Court of Appeals of the State of

19   Washington. Dkt. 11, Exhibit 20-23. The Court of Appeals of the State of Washington affirmed

20   Petitioner's convictions and sentence, and Petitioner sought review with the Washington State

21

22   _____

23       [1] Respondent concedes Petitioner exhausted the grounds for relief raised in the Amended Petition. *See* Dkt.
     10, p. 12; Dkt. 24, p. 3. Therefore, the Court will not discuss the specific grounds for relief raised on his direct
24   appeals or in his state Personal Restraint Petitions.

Supreme Court. Dkt. 11, Exhibits 4, 24. The Washington State Supreme Court denied review on September 4, 2013, and the mandate was issued on September 12, 2013. Dkt. 11, Exhibits 25, 26.

Petitioner filed a personal restraint petition ("PRP") seeking state post-conviction relief from the assault and bail jumping convictions and sentence on June 3, 2012. Dkt. 11, Exhibit 27. Petitioner's PRP was dismissed by the Court of Appeals of the State of Washington. Dkt. 11, Exhibit 32. Petitioner filed a motion for reconsideration, which the Washington State Supreme Court treated as a motion for discretionary review. Dkt. 11, Exhibit 33, 34. The Washington State Supreme Court denied review, and a certificate of finality was issued on April 11, 2014. Dkt. 11, Exhibits 34, 35.

Petitioner also filed a second PRP challenging his arson, burglary, and violation of a protective order convictions and sentence. Dkt. 11, Exhibit 36. The Court of Appeals of the State of Washington dismissed the second PRP. Dkt. 11, Exhibit 39. Petitioner filed a motion for reconsideration, which was treated as a motion for discretionary review. Dkt. 11, Exhibit 40. The Washington State Supreme Court denied review on April 24, 2015. Dkt. 11, Exhibit 41. The Court of Appeals of the State of Washington issued a certificate of finality on June 29, 2015. Dkt. 11, Exhibit 42.

Petitioner also filed several post-conviction motions in the state superior court, which were treated as a PRP and dismissed. *See* Dkt. 11, Exhibits 43, 49, 51-54. At the time Respondent filed her first Answer, Plaintiff has two additional PRPs pending with the Court of Appeals for the State of Washington. *See* Dkt. 10; Dkt. 11, Exhibit 55-57. As Respondent has conceded the grounds raised in the Amended Petition are exhausted, the Court will not further discuss these two PRPs. *See* Dkt. 10, 24.

On December 29, 2016, Petitioner filed his Petition raising the following three grounds: (1) under the Ex Post Facto Clause, the state does not have authority to impose an exceptional sentence if one was not imposed at the prior trial or sentencing; (2) the original cases that were joined for trial were both prejudiced by ineffective assistance of counsel; and (3) upon return for retrial, a speedy trial was asked for but was not granted violating the speedy trial rules. Dkt. 7.

Respondent filed the Answer on February 27, 2017, maintaining the state court's adjudication of Grounds 1 through 3 was not contrary to, or an unreasonable application of, clearly established federal law. Dkt. 10, 15. On August 9, 2017, the undersigned entered a Report and Recommendation ("R&R") recommending Petitioner's Petition be denied. Dkt. 16. After Petitioner filed Objections, Judge Settle adopted the R&R in part and "Petitioner's claims for a speedy trial violation, an ex post facto violation, and ineffective assistance of counsel [were] dismissed." Dkt. 18, p. 3 (emphasis omitted). Judge Settle, however, remanded this action to the undersigned "for further proceedings to determine whether the petition may be amended to add the claim raised in Petitioner's reply." *Id*.

The Court re-named Petitioner's Reply to "Motion to Amend the Petition" and granted the Motion. Dkt. 19, 22. On December 14, 2017, Petitioner's Amended Petition was filed, raising the following four grounds:

1. Under the Ex Post Facto Clause, the state does not have authority to impose an exceptional sentence if one was not imposed at the prior trial or sentencing.
2. The original cases that were joined for trial were both prejudiced by ineffective assistance of counsel.
3. Upon return for retrial, a speedy trial was asked for but was not granted violating the speedy trial rules.
4. Counsel and standby counsel were denied at the first and second phases of the trial resulting in constitutional violations.

Dkt. 23.

1    Respondent filed an Answer to the Amended Petition on January 26, 2018. Dkt. 24.

2    Petitioner did not file a reply. On March 15, 2018, the Court directed Respondent to file a

3    supplement to the state court records. Dkt. 25. Respondent filed the supplemental state court

4    record on April 18, 2018. Dkt. 26, 27.

5                                EVIDENTIARY HEARING

6         The decision to hold an evidentiary hearing is committed to the Court's discretion.

7    *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a

8    hearing could enable an applicant to prove the petition's factual allegations, which, if true, would

9    entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is

10   available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the

11   state court. *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011). A hearing is not required if the

12   allegations would not entitle Petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It

13   follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas

14   relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see Cullen*, 131 S.Ct.

15   1388. The Court finds it is not necessary to hold an evidentiary hearing in this case because the

16   grounds raised in the Amended Petition can be resolved on the existing state court record.

17                                   DISCUSSION

18        Pursuant to 28 U.S.C. § 2254(d)(1), a federal court may not grant habeas relief on the

19   basis of a claim adjudicated on the merits in state court unless the adjudication "resulted in a

20   decision that was contrary to, or involved an unreasonable application of, clearly established

21   Federal law, as determined by the Supreme Court of the United States." In interpreting this

22   portion of the federal habeas rules, the Supreme Court has ruled a state decision is "contrary to"

23   clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion

24

1    opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts

2    "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite

3    result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

4         Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply

5    because that court concludes in its independent judgment that the relevant state-court decision

6    applied clearly established federal law erroneously or incorrectly. Rather, that application must

7    also be unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An

8    unreasonable application of Supreme Court precedent occurs "if the state court identifies the

9    correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts

10   of the particular state prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court

11   decision involves an unreasonable application of Supreme Court precedent "'if the state court

12   either unreasonably extends a legal principle from [Supreme Court] precedent to a new context

13   where it should not apply or unreasonably refuses to extend that principle to a new context where

14   it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (*quoting Williams*, 529

15   U.S. at 407).

16         The Anti-Terrorism Effective Death Penalty Act ("AEDPA") requires federal habeas

17   courts to presume the correctness of state courts' factual findings unless applicants rebut this

18   presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, review of

19   state court decisions under §2254(d)(1) is "limited to the record that was before the state court

20   that adjudicated the claim on the merits." *Cullen*, 131 S.Ct. at 1398.

21

22

23

24

## I.    Grounds 1-3

Petitioner raised Grounds 1, 2, and 3 in the original Petition. *See* Dkt. 7. The Court has dismissed these three grounds. Dkt. 18. Therefore, the Court declines to reconsider Grounds 1, 2, or 3.

## II.    Ground 4 –Right to Counsel

In Ground 4, Petitioner alleges he was denied: (A) standby counsel prior to the first phase of his trial; and (B) appointed counsel at the second phase of his trial. Dkt. 23, p. 10.

The Sixth Amendment provides a defendant the right to self-representation in criminal cases. *See Faretta v. California*, 422 U.S. 806, 821, 832 (1975). "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." *Id.* at 835. "Waiver of the right to counsel, as of constitutional rights in the criminal process generally, must be a 'knowing, intelligent ac[t] done with sufficient awareness of the relevant circumstances.'" *Iowa v. Tovar*, 541 U.S. 77, 81 (2004) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). Therefore, a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835 (quoting *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 279 (1942)).

A defendant's waiver must be "an intentional relinquishment or abandonment of a known right or privilege." *Brewer v. Williams*, 430 U.S. 387, 404 (1977) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). "[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it." *United States v. Ruiz*, 536 U.S. 622 (2002)

(emphasis in original). The Supreme Court has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Id.* at 88. However, "[w]arnings of pitfalls of proceeding to trial without counsel . . . must be rigorously conveyed." *Id.* at 89 (internal quotations and citations omitted); *see also Tovar*, 541 U.S. at 81 (in discussing waiver of counsel when entering a guilty plea, the Supreme Court found the constitutional requirements were satisfied when the trial court informed the accused of the nature of the charges against him, his right to be counseled regarding his case, and the range of allowable punishments).

A.  <u>Right to Standby Counsel</u>

First, Petitioner states the trial court's decision to grant Petitioner *pro se* status on May 26, 2010, but deny his request for standby counsel prior to the first phase of his trial resulted in a manifest error affecting his constitutional rights. Dkt. 23, p. 10.

Once a court has determined that a defendant's waiver of his right to counsel is knowing, intelligent, and voluntary, it may appoint standby or "advisory" counsel to assist the defendant without infringing on his right to self-representation. *McKaskle v. Wiggins,* 465 U.S. 168, 176–77 (1984). However, a defendant who waives his right to counsel does not have a right to standby counsel. *United States v. Moreland*, 622 F.3d 1147, 1155 (9th Cir. 2010)[2]; *United States v. Salemo*, 81 F.3d 1453, 1460 (9th Cir. 1996); *United States v. Kienenberger*, 13 F.3d 1354, 1356 (9th Cir. 1994).

In rejecting Petitioner's claim that his rights were violated when he was denied standby counsel, the Court of Appeals of the State of Washington stated:

---

[2] Although Supreme Court precedent provides the only relevant source of clearly established federal law for AEDPA purposes, circuit precedent can be "persuasive authority for purposes of determining whether particular state court decision is an 'unreasonable application' of Supreme court law," and in ascertaining "what law is 'clearly established.'" *Duhaime v. Ducharme,* 200 F.3d 597, 600–01 (9th Cir. 2000).

1         Next, Douglas argues that the trial court erred by refusing to appoint standby
counsel after Douglas fired his second attorney and renewed his request to

2    proceed pro se. A defendant proceeding pro se has no constitutional right to
standby counsel. [*State v.*] *Silva*, 107 Wash.App. [605,] 626, 27 P.3d 663

3    [(2001)]. A pro se criminal defendant only has the right to adequate resources to
prepare his defense. *Silva*, 107 Wash.App. at 622–23, 27 P.3d 663. As we

4    explained above, Douglas was provided constitutionally adequate resources to aid
in his defense. The trial court did not err by refusing to appoint standby counsel

5    for Douglas.

6    *Douglas*, 173 Wash. App. at 856; Dkt. 11, Exhibit 4, p, 20.

7         Petitioner does not allege his waiver of his right to counsel was invalid. *See* Dkt. 23; *see*

8    *also* Dkt. 11, Exhibit 4, pp. 3-5; Dkt. 14, Exhibit 96. He argues only that his rights were violated

9    when he was denied standby counsel after validly waiving his right to counsel. *See* Dkt. 23, p.

10   10. Here, the state court correctly found there is no constitutional right to standby counsel after a

11   defendant has waived his right to counsel. Further, the state court determined that Petitioner was

12   provided with adequate resources to aid in his defense. *See Douglas*, 173 Wash. App. at 856;

13   Dkt. 11, Exhibit 4, pp. 16-18.[3] As Petitioner does not have a constitutional right to standby

14   counsel after he validly waives his right to counsel, Petitioner has failed to show the state court's

15   denial of his request for standby counsel prior to the first phase of his trial violated his

16   constitutional rights.

17        Therefore, Petitioner has not demonstrated the state court's conclusion that the trial court

18   did not err when it declined to provide Petitioner with standby counsel prior to the first phase of

19   his trial was contrary to, or an unreasonable application of, clearly established federal law, or

20   was an unreasonable determination of the facts in light of the evidence presented at trial. *See*

21   *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006) ("Certainly there is no Supreme Court

22   precedent clearly establishing [a right to standby counsel].").

23   _____

24      [3] Petitioner did not raise a claim of inadequate resources to aid in his defense. *See* Dkt. 23. Thus, the Court
need not address this portion of the state court's decision.

REPORT AND RECOMMENDATION - 10

B.  Right to Appointed Counsel

Second, Petitioner asserts the trial court's denial of Petitioner's request for appointed

counsel during the second phase, the aggravating factor phase, of his trial was a manifest error

resulting in a constitutional violation. Dkt. 23, p 10.

In determining Petitioner's right to counsel was not violated when the trial court did not

appoint counsel for the second phase of Petitioner's trial, the Court of Appeals of the State of

Washington stated:

> Douglas next argues that he was denied his Sixth Amendment right to counsel
> when the trial court refused to reappoint counsel for the aggravating factor phase
> of his trial. As an initial matter, Douglas urges this court to adopt a per se rule that
> counsel must be appointed for sentencing if the defendant requests it. Douglas
> cites exclusively to federal law to support this proposition. Br. of Appellant at 15
> (citing *United States v. Fazzini,* 871 F.2d 635 (7th Cir.1989); *United States v.
> Holmen,* 586 F.2d 322 (4th Cir.1978)). But the cases Douglas cites do not support
> his position because Douglas requested counsel midtrial rather than at a
> sentencing hearing. Instead, as the State correctly points out, under Washington
> law, once a defendant has asserted his right to represent himself and made a
> knowing, voluntary, and intelligent waiver of counsel, a criminal defendant is no
> longer entitled to reappointment of counsel. *State v. DeWeese,* 117 Wash.2d 369,
> 379, 816 P.2d 1 (1991).
>
> After a defendant's valid waiver of counsel, the reappointment of counsel is
> within the trial court's discretion. *DeWeese*, 117 Wash.2d at 379, 816 P.2d 1.
> When deciding whether to reappoint counsel, the trial court may take into account
> all existing circumstances. *State v. Modica*, 136 Wash.App. 434, 443, 149 P.3d
> 446 (2006) (citing *State v. Canedo–Astorga*, 79 Wash.App. 518, 525, 903 P.2d
> 500 (1995), *review denied*, 128 Wash.2d 1025, 913 P.2d 816 (1996)), *aff'd*, 164
> Wash.2d 83, 186 P.3d 1062 (2008). "[T]he degree of discretion reposing in the
> trial court is at its greatest when a request for reappointment of counsel is made
> after trial has begun." *Modica*, 136 Wash.App. at 443–44, 149 P.3d 446.
>
> Here, the trial court did not abuse its discretion when it refused to reappoint
> counsel for Douglas for the aggravating factor phase of his trial. Douglas argues
> that the trial court erred by making its decision based on its finding that Douglas
> would be unwilling to give up control of the case to an attorney. Douglas asserts
> that the only condition he placed on accepting new counsel was that the attorney
> be effective, which is his constitutional right. However, the record belies
> Douglas's assertion. Douglas had already fired two attorneys for being
> "ineffective," although the attorney's alleged ineffectiveness was limited to a

1

2

3

4

disagreement about trial strategy. Douglas regularly made it clear that he believed he was the most capable to handle his case, and his only dissatisfaction was the difficulty he faced acting as his own attorney while in jail. *See DeWeese*, 117 Wash.2d at 378, 816 P.2d 1 (defendant was not entitled to reappointment of counsel after he refused to accept professional advice from his two previous attorneys).

5

6

7

8

9

10

11

Even if Douglas had allowed counsel to control the case, appointment of counsel would have caused an excessive delay in a case that had already been in trial for approximately two months. Because Douglas refused to accept a DAC [(Department of Assigned Counsel)] attorney, any counsel would have to be appointed from the DAC conflict pool. Furthermore, counsel would likely need additional time to prepare for the aggravating factor phase of Douglas's trial. Douglas requested counsel in the middle of his trial, Douglas's request would have resulted in a significant delay while new counsel prepared, and, based on Douglas's prior conduct, the trial court had reason to believe reappointing counsel would result in another motion to proceed pro se. Accordingly, the trial court's decision does not rest on untenable grounds or reasons and the trial court did not abuse its discretion by denying Douglas's request for counsel for the aggravating factor phase of his trial. *Modica*, 136 Wash.App. at 443, 149 P.3d 446.

12

*Douglas*, 173 Wash. App. 849, 856 (internal footnote omitted); Dkt. 11, Exhibit 4, pp. 8-10.

13

14

15

16

17

18

19

20

21

22

23

In this case, the trial court bifurcated Petitioner's trial into a guilt phase and aggravating factor phase. *See* Dkt. 11, Exhibit 4; Dkt. 24, p. 7; Dkt. 26, Exhibit 104. Petitioner validly waived his right to counsel prior to proceeding with the first phase – the guilt phase – of his trial.[4] *See* Dkt. 23; Dkt. 11, Exhibit 4, pp. 3-5; Dkt. 14, Exhibit 96. After the first phase, Petitioner requested he be appointed counsel for the second phase – the aggravating factor phase – of his trial. Dkt. 26, Exhibit 105, pp. 2140-41. The trial court denied Petitioner's request for appointed counsel for the second phase of his trial because Petitioner would not relinquish control of his case. Dkt. 26, Exhibit 105, pp. 2145-55. On appeal, the Court of Appeals of the State of Washington found that (1) Petitioner would not relinquish control if his counsel was "ineffective;" (2) Petitioner had fired two previous attorneys for being "ineffective;" (3) appointing counsel in the middle of the trial would cause significant delays; and (4) the trial

24

---

[4] Petitioner does not contend his waiver of counsel was invalid. *See* Dkt. 23.

1    court had reason to believe, based on Petitioner's previous conduct regarding counsel, that

2    appointing counsel would result in another motion to proceed *pro se*. *See* Dkt. 11, Exhibit 4, pp.

3    8-10.

4          As discussed above, Petitioner has a right to represent himself during his criminal trial.

5    *See Faretta*, 422 U.S. at 821, 832. However, "[t]here is no clearly established federal law

6    requiring the appointment of counsel after a defendant has validly waived counsel." *Gonzales v.*

7    *Ryan*, 2015 WL 4755068, at *24 (D. Ariz. Aug. 12, 2015). Petitioner validly waived his right to

8    counsel. He then requested counsel be appointed mid-trial. The trial court denied the request

9    after considering Petitioner's prior tendency to refuse to relinquish control of the case to his

10   attorney. The Court notes Petitioner also had a history of firing his attorneys, and appointing new

11   counsel in the middle of the case would cause a delay in a trial that had already lasted nearly two

12   months. *See* Dkt. 14, Exhibits 76, 85, 96; Dkt. 26, Exhibit 106, p. 2245, Exhibit 105, p. 2144.

13         The Court finds Petitioner has failed to show the state court's decision was an

14   unreasonable application of clearly established federal law. *See Marshall v. Rodgers*, 569 U.S.

15   58, 62-63 (2013) (reversing appellate court's decision finding trial judge violated criminal

16   defendant's Sixth Amendment right by not appointing counsel after the defendant had executed a

17   valid waiver of counsel and represented himself at trial, but sought and was denied appointment

18   of counsel to file a post-conviction motion for a new trial; noting absence of any Supreme Court

19   decision addressing criminal defendant's ability to reassert right to counsel once validly waived,

20   and finding no basis for conclusion that the state court's approach to case was contrary to or an

21   unreasonable application of clearly established federal law); *McCormick v. Adams*, 621 F.3d 970,

22   980 (9th Cir. 2010) (holding the state court's decision to deny the defendant appointment of

23   counsel in the middle of his trial after he validly waived counsel was not an unreasonable

24

REPORT AND RECOMMENDATION - 13

1    determination of the facts presented to it, nor was it contrary to, or an unreasonable application

2    of, clearly-established federal law). As there is no clearly established federal law requiring that

3    Petitioner be reappointed counsel for the second phase of his trial after he validly waived his

4    right to counsel at the beginning of his first phase of the trial, Petitioner has not demonstrated the

5    state court's conclusion that the trial court did not err when it failed to appoint Petitioner counsel

6    for the second phase of his trial was contrary to, or an unreasonable application of, clearly

7    established federal law, or was an unreasonable determination of the facts in light of the evidence

8    presented at trial.

9        C.    <u>Conclusion</u>

10        The Court finds Petitioner has not shown the state court's decision finding Petitioner's

11    constitutional rights were not violated when the trial court denied (1) standby counsel prior to the

12    first phase of his trial; and (2) appointed counsel for the second phase of his trial was contrary to,

13    or an unreasonable application of, clearly established federal law, or was an unreasonable

14    determination of the facts in light of the evidence presented at trial. Accordingly, the Court

15    recommends Ground 4 be denied.

16                        <u>CERTIFICATE OF APPEALABILITY</u>

17        A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

18    court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

19    (COA) from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability

20    may issue . . . only if the [petitioner] has made a substantial showing of the denial of a

21    constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating

22    that jurists of reason could disagree with the district court's resolution of his constitutional

23    claims or that jurists could conclude the issues presented are adequate to deserve encouragement

24

1    to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*,

2    529 U.S. 473, 484 (2000)).

3         No jurist of reason could disagree with this Court's evaluation of Petitioner's claims or

4    would conclude the issues presented in the Petition should proceed further. Therefore, the Court

5    concludes Petitioner is not entitled to a certificate of appealability with respect to this Amended

6    Petition.

7                                    <u>CONCLUSION</u>

8         For the above stated reasons, the Court recommends the Amended Petition be denied. No

9    evidentiary hearing is necessary and a certificate of appealability should be denied.

10        Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

11   fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

12   6. Failure to file objections will result in a waiver of those objections for purposes of de novo

13   review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

14   imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on June

15   1, 2018, as noted in the caption.

16        Dated this 14th day of May, 2018.

17

18

         David W. Christel
19       United States Magistrate Judge

20

21

22

23

24

REPORT AND RECOMMENDATION - 15